UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA STENSLAND, Individually, and as the Administrator of the ESTATE OF CADE STENSLAND, and as Guardian for C.S., B.S., and E.S., | ) ) ) ) ) ) | FILE #: CIV:18-5062 |
| Plaintiff, | ) ) | |
| v. | ) ) | DEFENDANTS' THIRD-PARTY COMPLAINT AGAINST |
| CAVALLO BUS LINES, INC., and CAVALLO BUS LINES, LLC, | ) ) ) ) | MOTOR COACH INDUSTRIES INTERNATIONAL, INC., AND MOTOR COACH INDUSTRIES, INC. |
| Defendants and Third Party Plaintiffs | ) ) ) | |
| v. | ) ) | |
| MOTOR COACH INDUSTRIES INTERNATIONAL, INC., and MOTOR COACH INDUSTRIES, INC. | ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

Cavallo Bus Lines, Inc., and Cavallo Bus Lines, LLC, (collectively "Cavallo"), for their third-party Complaint against Third Party Defendants Motor Coach Industries International, Inc., and Motor Coach Industries, Inc., state and allege as follows:

## PARTIES

1. Plaintiff Christina Stensland is domiciled in and is a citizen of the state of Iowa with an address of 1620 Arthur Avenue, Larchwood, Iowa 51241.

2. On January 25, 2018, Plaintiff was duly appointed and qualified as Administrator of the Estate of Cade Stensland in the Iowa District Court for Lyon County.

3. Charlotte Stensland, Bristol Stensland, and Elliott Stensland are the children of Cade Stensland and Plaintiff and are citizens of the state of Iowa residing with their mother, the Plaintiff.

4. At all times relevant to this action, Defendant Cavallo Bus Lines, Inc., was an Illinois corporation with a principal address of 509 Illinois Ave., Gillespie, IL 62033. At all times material to this action, Defendant Cavallo Bus Lines, Inc., owned and operated a transportation company which transported passengers to destinations within the United States.

5. At all times relevant to this action, Defendant Cavallo Bus Lines, LLC, was an Illinois limited liability company with a principal address of 509 Illinois Ave., Gillespie, IL 62033. At all times material to this action, Defendant Cavallo Bus Lines, Inc., owned and operated a transportation company which transported passengers to destinations within the United States.

6. Upon information and belief, Third-Party Defendant Motor Coach Industries International, Inc., is a Delaware Corporation with a principal place of business at 200 East Oakton Street, Des Plaines, IL 60018.

7. Upon information and belief, Motor Coach Industries, Inc., is a Delaware Corporation with a principal place of business at 200 East Oakton Street, Des Plaines, IL 60018. Both entities will hereinafter be collectively referred to as "MCI".

## JURISDICTION

8. Jurisdiction is based upon diversity of citizenship in accordance with 28 U.S.C. § 1332 (a)(1).

9. This third-party complaint is made and filed in accordance with Rule 14(a) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

10. On December 21, 2017, at approximately 8:30 p.m., a Cavallo Bus Lines, Inc., tour bus (hereinafter "bus") owned and operated by Cavallo was traveling eastbound on Interstate 90 near mile marker 79 in Pennington County, South Dakota, when it abruptly lost power, including its lights.

11. The bus was a Motor Coach Industry J4500, with a Unit Number of 66377 (the "bus"), manufactured by MCI.

12. Upon information and belief, the driver, Ms. Kristie Monaghan, unintentionally activated the "Master Power Switch" (or ignition switch) and moved it to the off position.

13. This in turn caused the bus to lose power.

14. The bus, as designed, has a defective design in that the "Master Power Switch," has both a physical design defect and an electronic design defect.

15. The physical design of the "Master Power Switch" allows for easy, unintentional activation.

16. Likewise, the bus lacked the adequate warnings and instructions concerning the "Master Power Switch's" (a) identification, (b) functionality, (c) proper use, and (d) warnings about foreseeable misuse.

17. The defective design and/or inadequate warning allowed an unintentional activation of the subject ignition switch.

18. As a result of the power loss, the bus came to a stop in the middle of the two east-bound lanes of Interstate 90.

19. Concurrently, Mr. Stensland was also traveling eastbound on Interstate 90 in Pennington County, South Dakota.

3

20. Mr. Stensland's vehicle, a Ford Econoline E250, struck the rear portion of the unlit, stopped bus.

21. Mr. Stensland sustained fatal injuries in the crash.

22. But for the unintentional activation of the subject ignition switch, this accident would not have occurred.

### COUNT ONE OF THIRD-PARTY COMPLAINT AGAINST MCI: CONTRIBUTION

23. Defendant and Third-party Plaintiffs reallege paragraphs 1-22 as if specifically set forth herein.

24. Plaintiff has sued alleging that Cavallo is liable to Plaintiff for the injuries caused to and death of Mr. Stensland allegedly resulting from the bus losing power.

25. If Cavallo is found to be liable to Plaintiff for any damages, which liability is expressly denied, such liability would arise from the acts or omissions of MCI. Any joint liability between the parties would be disproportionate in terms of fault so as to render inequitable an equal distribution between them of common liability. Therefore, Cavallo is entitled to a determination of the relative degrees of fault and contribution from MCI.

### COUNT TWO OF THIRD-PARTY COMPLAINT AGAINST MCI: STRICT LIABILITY (DEFECTIVE DESIGN)

26. Defendant and Third-party Plaintiffs reallege paragraphs 1-25 as if specifically set forth herein.

27. MCI, as manufacturer of the bus, is strictly liable for the physical harm caused by the bus's defective design.

4

28. The bus, as designed, and as a result of the defective design of the "Master Power Switch" alleged herein, was in a defective condition unreasonably dangerous to the user or consumer.

29. The bus, as designed, and as a result of the defective design of the "Master Power Switch" alleged herein, was in this defective condition when it left MCI, the manufacturer.

30. The "Master Power Switch" was defectively designed because, despite controlling critical vehicle functions, it was identical (or nearly identical) in size, shape, and manner of operation as several other switches on the same switch panel in the bus.

31. The "Master Power Switch" was defectively designed because, despite the fact that it was not necessary to be actuated while the bus was in motion, it was not easily visible by the bus driver while operating the bus, and was positioned in close proximity to other switches that MCI should have reasonably foreseen would have had to be actuated by the bus driver during ordinary over-the-road operation of the bus.

32. The "Master Power Switch" and related systems were defectively designed because actuation of the switch from the "ON" to "OFF" position, even while the bus was in motion, resulted in a complete shutdown of the bus's electrical system, including exterior lighting.

33. The "Master Power Switch" was defectively designed because it required such little force to actuate that it was reasonably foreseeable that it could and would be inadvertently actuated by a bus driver.

34. The foreseeable risks of harm posed by the defectively designed "Master Power Switch" could have been reduced or avoided by MCI's adoption of a reasonable alternative

5

design that included alternate physical switch designs, alternate switch locations, and/or an alternate manner of operation.

35. The omission of this alternative design rendered the product not reasonably safe.

36. The defective design made or rendered the product unreasonably dangerous.

37. This defective design was the cause of the damages suffered by the Plaintiff.

### COUNT THREE OF THIRD-PARTY COMPLAINT AGAINST MCI: STRICT LIABILITY (FAILURE TO WARN)

38. Defendant and Third-party Plaintiffs reallege paragraphs 1-37 as if specifically set forth herein.

39. A danger existed associated with a foreseeable use of the bus as designed.

40. An inadequate warning was given regarding the danger associated with the design of the "Master Power Switch." No warning was provided to foreseeable end users regarding the dangers associated with the design or operation of the "Master Power Switch" on the bus.

41. Users were not warned that inadvertent operation of the "Master Power Switch" while the bus was being driven down the road would result in a complete and total shutdown of the critical electrical systems, including engine operation and exterior lighting.

42. Similarly, users were not warned that the "Master Power Switch" was nearly identical in location, appearance, and manner of function as several other oft-used switches on the bus.

43. As a result of the lack of adequate warnings, the bus, and "Master Power Switch" were rendered defective and unreasonably dangerous.

44. This defective and unreasonably dangerous condition existed at the time it left the control of the manufacturer, MCI.

6

45. The bus and "Master Power Switch" were expected to and did reach Cavallo without a substantial unforeseeable change in the condition that it was in when it left the MCI's control.

46. This defective condition was the legal cause of Mr. Stensland's injuries.

### COUNT FOUR OF THIRD-PARTY COMPLAINT AGAINST MCI: NEGLIGENT DESIGN

47. Defendant and Third-party Plaintiffs reallege paragraphs 1-46 as if specifically set forth herein.

48. MCI owed a duty to use the amount of care in the design of its bus and the "Master Power Switch" that a reasonably careful manufacturer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.

49. MCI is negligent due to the failure to fulfill and breach of this duty.

50. MCI knew or should have known of the likelihood and severity of the potential harm associated with the defective product.

51. The negligent design was the proximate and actual cause of Mr. Stensland's injuries and death.

52. Mr. Stensland suffered damages as a result of MCI's defective design.

### COUNT FIVE OF THIRD-PARTY COMPLAINT AGAINST MCI: NEGLIGENT FAILURE TO WARN

53. Defendant and Third-party Plaintiffs reallege paragraphs 1-52 as if specifically set forth herein.

54. Injury could have been reasonably anticipated if an adequate warning was not given for Cavallo's reasonably foreseeable use of the bus and "Master Switch" as designed.

7

55. MCI owed a duty to give adequate warning of known or reasonably anticipated dangers of the bus and "Master Power Switch."

56. MCI breached this duty.

57. The danger or potentiality of this danger was not obvious or actually known to Cavallo or Plaintiff.

58. This failure to warn was the cause of the Plaintiff's damages and Mr. Stensland's injuries and death.

WHEREFORE, Cavallo prays for judgment against MCI as follows:

A. pFor judgment in Cavallo's favor on its claims against MCI;

B. For any and all economic and non-economic damages Cavallo may be entitled to under law, including reasonable attorneys fees, costs, and disbursements; and

C. For all other appropriate relief to which Cavallo is entitled under the law.

**TRIAL BY JURY IS HEREBY DEMANDED**

Dated: October 26, 2018.

GUNDERSON, PALMER, NELSON
& ASHMORE, LLP

By: _____
J. Crisman Palmer
Katelyn A. Cook
Attorneys for Defendants, Cavallo Bus Lines,
LLC and Cavallo Bus Lines, Inc.
506 Sixth Street
P.O. Box 8045
Rapid City, SD 57709
Telephone: (605) 342-1078
Telefax: (605) 342-9503
E-mail: cpalmer@gpna.com
katie@gpna.com