UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA STENSLAND, Individually, and as the Administrator of the ESTATE of CADE STENSLAND, and as Guardian for C.S., B.S., and E.S. Plaintiff | ) ) ) ) ) ) | |
| vs. | ) ) | Case No. CIV:18-5062 |
| CAVALLO BUS LINES, INC. and CAVALLO BUS LINES, LLC, Defendants and Third- Party Plaintiff | ) ) ) ) ) ) ) | **FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO DEFENDANTS AMENDED THIRD-PARTY COMPLAINT AGAINST MOTOR COACH INDUSTRIES INTERNATIONAL,** |
| vs. | ) ) ) | **INC. AND MOTOR COACH INDUSTRIES, INC.** |
| MOTOR COACH INDUSTRIES INTERNATIONAL, INC. and MOTOR COACH INDUSTRIES, INC., Third- Party Defendants | ) ) ) ) ) | |

Third-Party Defendants, Motor Coach Industries International, Inc. and Motor Coach Industries, Inc., (collectively "MCI"), by and through their attorneys of record, Terry L. Hofer, Bangs McCullen Law Firm, and Nicholas C. Grant, Ebeltoft. Sickler . Lawyers . PLLC, hereby submit this answer to Defendants' and Third-Party Plaintiffs', Cavallo Bus Lines, Inc., Cavallo Bus Lines, LLC (collectively "Cavallo") and New York Marine and General Insurance Company's ("NYMARINE) Amended Third-Party Complaint, as follows:

MCI denies each and every allegation, matter and thing contained in the Amended Third-Party Complaint, except those matters which are specifically

admitted or qualified, and the Amended Third-Party Complaint fails to state a claim upon which relief can be granted.

## PARTIES

1.          Plaintiff Christina Stensland is domiciled in and is a citizen of the state of Iowa with an address of 1620 Arthur Avenue, Larchwood, Iowa 51241.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief about the truth of Paragraph 1.

2.     On January 25, 2018, Plaintiff was duly appointed and qualified as Administrator of the Estate of Cade Stensland in the Iowa District Court for Lyon County.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief about the truth of Paragraph 2.

3.     C.S, B.S, and E.S. are the children of Cade Stensland and Plaintiff and are citizens of the state of Iowa residing with their mother, the Plaintiff.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief about the truth of Paragraph 3.

4.     At all times relevant to this action, Defendant Cavallo Bus Lines, Inc., was an Illinois corporation with a principal address of 509 Illinois Ave., Gillespie, IL 62033. At all times material to this action, Defendant Cavallo Bus Lines, Inc., owned and operated a transportation company which transported passengers to destinations within the United States.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief about the truth of Paragraph 4.

5.     At all times relevant to this action, Defendant Cavallo Bus Lines, LLC, was an Illinois limited liability company with a principal address of 509 Illinois Ave., Gillespie, IL 62033. At all times material to this action, Defendant Cavallo Bus Lines, Inc., owned and operated a transportation company which transported passengers to destinations within the United States.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief about the truth of Paragraph 5. Defendant Cavallo Bus Lines, LLC alleges in the first sentence that it is an "Illinois limited liability company" but previously admitted in its Answer to Plaintiff Stensland's Complaint that it is a "Delaware limited liability company." Defendant Cavallo Bus Lines, LLC alleges in the second sentence that Defendant Cavallo Bus Lines, Inc. owned and operated a transportation company, which appears to refer to an incorrect entity. Defendant Cavallo Bus Lines, LLC fails to allege the citizenship of each of its members and to this extent, MCI denies.

6.     At all times relevant to this action, the Third-Party Plaintiff New York Marine and General Insurance Company (NYMARINE) was a New York corporation with its principal place of business in New York. At all times material to this action, NYMARINE was the liability insurer of Cavallo.

> **ANSWER:** MCI lacks knowledge or information sufficient to form a belief regarding the truth of Paragraph 6, and therefore denies the same.

7.     Upon information and belief, Third-Party Defendant Motor Coach Industries International, Inc., is a Delaware Corporation with a principal place of business at 200 East Oakton Street, Des Plaines, IL 60018.

> **ANSWER:** MCI admits Paragraph 7.

8.     Upon information and belief, Motor Coach Industries, Inc., is a Delaware Corporation with a principal place of business at 200 East Oakton Street, Des Plaines, IL 60018.  Both entities will hereinafter be collectively referred to as "MCI".

**ANSWER:  MCI admits Paragraph 8.**

9.     Upon information and belief, and in accordance with SDCL § 15-6-9(h), certain unnamed entities referred herein as "Doe Corporations 1-5 participated in the design, manufacture, assembly, or distribution of the subject Motor Coach Industry [sic] J4500, with a Unit Number of 66377.

**ANSWER:  MCI admits that Motor Coach Industries Limited was involved with the design, manufacture, and distribution of the J4500 model coach. Except as expressly admitted herein, MCI lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 9 and therefore denies the same.**

## JURISDICTION

10.     Jurisdiction is based upon diversity of citizenship in accordance with 28 U.S.C. § 1332 (a)(1).

**ANSWER:  MCI admits that Defendants and Third-Party Plaintiffs claim federal subject matter jurisdiction based on diversity of citizenship, which claim is a legal conclusion, and otherwise denies. Further, MCI affirmatively asserts that it and the Cavallo entities are not diverse parties, as Cavallo Bus Lines, Inc. alleges it was an Illinois corporation, and Cavallo Bus Lines, LLC alleges it was an Illinois limited liability company. Furthermore, Cavallo Bus Lines, LLC has failed to allege the citizenship of its individual members, which, if any are Illinois residents, may further undermine diversity jurisdiction.**

11.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER: MCI admits the allegations of Paragraph 11.

12. This third-party complaint is made and filed in accordance with Rule 14(a) of the Federal Rules of Civil Procedure.

> ANSWER: MCI admits that Defendants and Third-Party Plaintiffs filed its Amended Third-Party Complaint pursuant to the Court's Order [Document 41] based on Fed. R. Civ. P. 14, and otherwise denies.

## GENERAL ALLEGATIONS

13. On December 21, 2017, at approximately 8:30 p.m., a Cavallo Bus Lines, Inc., tour bus (hereinafter "bus") owned and operated by Cavallo was traveling eastbound on Interstate 90 near mile marker 79 in Pennington County, South Dakota, when it abruptly lost power, including its lights.

> ANSWER: MCI denies the allegations of Paragraph 13, and affirmatively states that the bus did not "abruptly" lose power, but rather that Cavallo's employee, Kristie Monigan, negligently deactivated the Master Power Switch and was further negligently trained by Cavallo on how to operate the bus, including, but not limited to, its electrical and light systems.

14. The bus was a Motor Coach Industry J4500, with a Unit Number of 66377 (the "bus"), manufactured by MCI.

> ANSWER: MCI admits that Motor Coach Industries Limited manufactured a model year 2013 J4500 motor coach bearing VIN 2MG3JMBA9DW066377. Except as expressly admitted herein, MCI denies the allegations of Paragraph 14.

15. Upon information and belief, Doe Corporations 1-5, assisted MCI in the design, manufacture, assembly, and distribution of the subject bus and its component parts.

> ANSWER: MCI admits that Motor Coach Industries Limited manufactured a model year 2013 J4500 motor coach bearing VIN

2MG3JMBA9DW066377. Excepted as expressly admitted herein, MCI is without knowledge or information sufficient to form a belief and therefore denies the remaining allegations of Paragraph 15.

16.　Upon information and belief, the driver, Ms. Kristie Monaghan [sic], unintentionally activated the "Master Power Switch" (or ignition switch) and moved it to the off position.

> ANSWER:　MCI denies the allegations of Paragraph 16, and affirmatively states that Ms. Monigan was negligent in activating the "Master Power Switch", and was further negligently trained by Cavallo on the on how to operate the bus, including, but not limited to, its electrical and light systems.

17.　This in turn caused the bus to lose power.

ANSWER:　MCI denies the allegations of Paragraph 17.

18.　The bus, as designed, has a defective design in that the "Master Power Switch," has both a physical design defect and an electronic design defect.

ANSWER:　MCI denies the allegations of Paragraph 18.

19.　The physical design of the "Master Power Switch" allows for easy, unintentional activation.

ANSWER:　MCI denies the allegations of Paragraph 19.

20.　Likewise, the bus lacked the adequate warnings and instructions concerning the "Master Power Switch's" (a) identification, (b) functionality, (c) proper use, and (d) warnings about foreseeable misuse.

ANSWER:　MCI denies the allegations of Paragraph 20.

21.　The defective design and/or inadequate warning allowed an unintentional activation of the subject ignition switch.

ANSWER:　MCI denies the allegations of Paragraph 21.

22.    As a result of the power loss, the bus came to a stop in the middle of the two eastbound lanes of Interstate 90.

> ANSWER:  MCI denies the allegations of Paragraph 22, as the bus did not come to a stop due to a "power loss." Rather, MCI affirmatively states that the bus lost power due to Kristie Monigan's negligent activation of the Master Power Switch, negligent failure to recognize what she had done and take corrective action, due, in part, to her lack of training by Cavallo on the operations of the bus, and her further negligence in allowing the bus to become stopped on Interstate 90 without, at a minimum, activating the flashing hazard lights.

23.    Concurrently, Mr. Stensland was also traveling eastbound on Interstate 90 in Pennington County, South Dakota.

> ANSWER:  Admit.

24.    Mr. Stensland's vehicle, a Ford Econoline E250, struck the rear portion of the unlit, stopped bus.

> ANSWER:  MCI admits that Mr. Stensland's vehicle struck the rear of the bus, but denies the bus was either unlit or stopped due to any negligence or other fault of MCI.

25.    Mr. Stensland sustained fatal injuries in the crash.

> ANSWER:  Admit.

26.    But for the design and placement of the subject ignition switch, the switch would never have been activated and this accident would not have occurred.

> ANSWER:  MCI denies the allegations of Paragraph 26.

27.    At all relevant times hereto, NYMARINE, provided liability insurance to Cavallo with business auto coverage pursuant to terms and

conditions of the NYMARINE policy AU201700003892 ("NYMARINE Policy").

ANSWER: Admit.

28. Pursuant to the terms of the NYMARINE Policy and NYMARINE's obligations under the policy, NYMARINE settled the claim asserted against Cavallo by the Plaintiffs on October 29, 2019. NYMARINE's settlement payment was made pursuant to a full reservation of rights, including the right to seek further contribution to the settlement from MCI and Doe Corporations 1-5.

ANSWER: MCI lacks knowledge or information sufficient to form a belief as to the terms of the NYMARINE Policy or NYMARINE's obligations under the policy, and therefore denies the same. MCI admits that NYMARINE participated in settling the claims of Plaintiffs on October 29, 2019, and admits that said settlement was done pursuant to a reservation of rights, but denies the parties' settlement agreement identified or allowed NYMARINE the right to seek contribution from Doe Corporations 1-5.

29. By the settlement agreement, the Plaintiff's entire loss arising from the underlying incident was settled and extinguished, including any present or potential claims against MCI and Doe Defendants 1-5.

ANSWER: Admit.

30. All parties to the settlement agreement agreed the settlement was reasonable.

ANSWER: MCI admits that the settlement was reasonable. Except as expressly admitted herein, MCI lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 30, and therefore denies the same.

31. In addition to the payment of the settlement, NYMARINE has reimbursed Cavallo for other costs pursuant to its policy of insurance, including the subject bus.

ANSWER: MCI lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 31, and therefore denies the same.

32. Pursuant to the settlement on behalf of Cavallo, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo and is a bona fide subrogee of Cavallo to the extent of payments made.

ANSWER: Paragraph 32 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.

33. Pursuant to FRCP 17 and NYMARINE's settlement payments on behalf of Cavallo, NYMARINE has become the real party in interest as Subrogee of Cavallo.

ANSWER: Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same. MCI affirmatively denies that NYMARINE is the "real party in interest" with respect to MCI's counterclaims against Cavallo.

34. For the reasons which follow, Cavallo and NYMARINE should not be primarily liable for the incident which precipitated Plaintiff's claimed losses.

ANSWER: MCI denies the allegations of Paragraph 34, and affirmatively states that Cavallo and NYMARINE should be primarily liable for Plaintiff's losses.

## COUNT ONE OF THIRD-PARTY COMPLAINT AGAINST MCI AND DOE CORPORATIONS: CONTRIBUTION

35. Defendant and Third-Party Plaintiffs reallege paragraphs 1-34 as if specifically set forth herein.

9

> ANSWER: MCI realleges its responses in Paragraphs 1-34 as if specifically set forth herein.

36. Plaintiff has sued alleging that Cavallo is liable to Plaintiffs for the injuries caused to and death of Mr. Stensland allegedly resulting from the bus losing power.

> ANSWER: MCI admits Plaintiffs filed a Complaint and Demand for Jury Trial [Document 1] August 20, 2018 but otherwise denies.

37. If Cavallo is found to be liable to Plaintiffs for any damages, which liability is expressly denied, such liability would arise from the acts or omissions of MCI and Doe Corporations 1-5. Any joint liability between the parties would be disproportionate in terms of fault so as to render inequitable an equal distribution between them of common liability. Therefore, Cavallo is entitled to a determination of the relative degrees of fault and contribution from MCI and Doe Corporations 1-5.

> ANSWER: MCI denies the allegations of Paragraph 37.

38. Pursuant to the provisions of the policy of insurance issued to Cavallo by NYMARINE, NYMARINE made payments on behalf of Cavallo to settle the claims asserted by Plaintiffs.

> ANSWER: MCI admits that NYMARINE made payments to settle the claims of Plaintiffs, but lacks knowledge or information sufficient to form a belief as to the remaining allegations, and therefore denies the same.

39. By virtue of said payments, terms of said policies of insurance, and by virtue of equity, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo against the Defendants, MCI and Doe Corporations 1-5.

ANSWER: Paragraph 39 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.

## COUNT TWO OF THIRD-PARTY COMPLAINT AGAINST MCI AND DOE CORPORATIONS 1-5: STRICT LIABILITY (DEFECTIVE DESIGN)

40.    Defendant and Third-Party Plaintiffs reallege paragraphs 1-39 as if specifically set forth herein.

ANSWER: MCI realleges its responses in Paragraphs 1-39 as if specifically set forth herein.

41.    MCI and Doe Corporations 1-5, as designer, manufacturer, assembler and/or distributor of the bus, are strictly liable for the physical harm caused by the bus's defective design.

ANSWER: MCI denies the allegations of Paragraph 41.

42.    The bus, as designed, and as a result of the defective design of the "Master Power Switch" alleged herein, was in a defective condition unreasonably dangerous to the user or consumer.

ANSWER: MCI denies the allegations of Paragraph 42.

43.    The bus, as designed, and as a result of the defective design of the "Master Power Switch" alleged herein, was in this defective condition when it left MCI, the manufacturer.

ANSWER: MCI denies the allegations of Paragraph 43.

44.    The "Master Power Switch" was defectively designed because, despite controlling critical vehicle functions, it was identical (or nearly identical) in size, shape, and manner of operation as several other switches on the same switch panel in the bus.

ANSWER: MCI denies the allegations of Paragraph 44.

45. The "Master Power Switch" was defectively designed because, despite the fact that it was not necessary to be actuated while the bus was in motion, it was not easily visible by the bus driver while operating the bus, and was positioned in close proximity to other switches that MCI Doe Corporations 1-5 should have reasonably foreseen would have had to be actuated by the bus driver during ordinary over-the-road operation of the bus.

ANSWER: MCI denies the allegations of Paragraph 45.

46. The "Master Power Switch" and related systems were defectively designed because actuation of the switch from the "ON" to "OFF" position, even while the bus was in motion, resulted in a complete shutdown of the bus's electrical system, including exterior lighting.

ANSWER: MCI denies the allegations of Paragraph 46.

47. The "Master Power Switch" was defectively designed because it required such little force to actuate that it was reasonably foreseeable that it could and would be inadvertently actuated by a bus driver.

ANSWER: MCI denies the allegations of Paragraph 47.

48. The foreseeable risks of harm posed by the defectively designed "Master Power Switch" could have been reduced or avoided by MCI and Doe Corporation 15's adoption of a reasonable alternative design that included alternate physical switch designs, alternate switch locations, and/or an alternate manner of operation.

ANSWER: MCI denies the allegations of Paragraph 48.

49. The omission of this alternative design rendered the product not reasonably safe.

ANSWER: MCI denies the allegations of Paragraph 49.

50. The defective design made or rendered the product unreasonably dangerous.

**ANSWER: MCI denies the allegations of Paragraph 50.**

51. This defective design was the cause of the damages suffered by the Plaintiff.

**ANSWER: MCI denies the allegations of Paragraph 51.**

52. Pursuant to the provisions of the policy of insurance issued to Cavallo by NYMARINE, NYMARINE made payments on behalf of Cavallo to settle the claims asserted by Plaintiffs.

**ANSWER: MCI admits NYMARINE made payments to settle the claims of Plaintiffs, but lacks knowledge or information sufficient to form a belief as to the remaining allegations.**

53. By virtue of said payments, terms of said policies of insurance, and by virtue of equity, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo against the Defendants, MCI and Doe Corporations 1-5.

**ANSWER: Paragraph 53 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.**

## COUNT THREE OF THIRD-PARTY COMPLAINT AGAINST MCI: STRICT LIABILITY (FAILURE TO WARN)

54. Defendant and Third-Party Plaintiffs reallege paragraphs 1-53 as if specifically set forth herein.

**ANSWER: MCI realleges its responses in Paragraphs 1-53 as if specifically set forth herein.**

55.     A danger existed associated with a foreseeable use of the bus as designed.

**ANSWER: MCI denies the allegations of Paragraph 55.**

56.     An inadequate warning was given regarding the danger associated with the design of the "Master Power Switch." No warning was provided to foreseeable end users regarding the dangers associated with the design or operation of the "Master Power Switch" on the bus.

**ANSWER: MCI denies the allegations of Paragraph 56.**

57.     Users were not warned that inadvertent operation of the "Master Power Switch" while the bus was being driven down the road would result in a complete and total shutdown of the critical electrical systems, including engine operation and exterior lighting.

**ANSWER: MCI denies the allegations of Paragraph 57.**

58.     Similarly, users were not warned that the "Master Power Switch" was nearly identical in location, appearance, and manner of function as several other oft-used switches on the bus.

**ANSWER: MCI denies the allegations of Paragraph 58.**

59.     As a result of the lack of adequate warnings, the bus, and "Master Power Switch" were rendered defective and unreasonably dangerous.

**ANSWER: MCI denies the allegations of Paragraph 59.**

60.     This defective and unreasonably dangerous condition existed at the time it left the control of the manufacturer, MCI.

**ANSWER: MCI denies the allegations of Paragraph 60.**

61. The bus and "Master Power Switch" were expected to and did reach Cavallo without a substantial unforeseeable change in the condition that it was in when it left the MCI's control.

ANSWER: MCI denies the allegations of Paragraph 61.

62. This defective condition was the legal cause of Mr. Stensland's injuries.

ANSWER: MCI denies the allegations of Paragraph 62.

63. Pursuant to the provisions of the policy of insurance issued to Cavallo by NYMARINE, NYMARINE made payments on behalf of Cavallo to settle the claims asserted by Plaintiffs.

ANSWER: MCI admits NYMARINE made payments to settle the claims of Plaintiffs, but lacks knowledge or information sufficient to form a belief as to the remaining allegations.

64. By virtue of said payments, terms of said policies of insurance, and by virtue of equity, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo against the Defendants, MCI and Doe Corporations 1-5.

ANSWER: Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.

## COUNT FOUR OF THIRD-PARTY COMPLAINT AGAINST MCI AND DOE CORPORATION 1-5: NEGLIGENT DESIGN

65. Defendant and Third-Party Plaintiffs reallege paragraphs 1-64 as if specifically set forth herein.

ANSWER:  MCI realleges its responses in Paragraphs 1-64 as if
specifically set forth herein.

66.     MCI and Doe Corporation 1-5 owed a duty to use the
amount of care in the design of its bus and the "Master Power Switch"
that a reasonably careful manufacturer would use in similar
circumstances to avoid exposing others to a foreseeable risk of harm.

ANSWER:  MCI admits that Cavallo claims a legal duty as
described in Paragraph 66 but legal duty and its
scope are questions of law requiring legal conclusions
and otherwise denies.

67.     MCI is negligent due to the failure to fulfill and breach of this duty.

ANSWER:  MCI denies the allegations of Paragraph 67.

68.     MCI knew or should have known of the likelihood and severity
of the potential harm associated with the defective product.

ANSWER:  MCI denies the allegations of Paragraph 68.

69.     The negligent design was the proximate and actual cause of
Mr. Stensland's injuries and death.

ANSWER:  MCI denies the allegations of Paragraph 69, and
further affirmatively alleges that the proximate and actual cause
of Mr. Stensland's injuries and death were the negligence of
Cavallo's employee, Kristie Monigan , as well as Cavallo's
negligent hiring, retention, supervision, and training of Ms.
Monigan  and Cavallo's negligent maintenance of the bus.

70.     Mr. Stensland suffered damages as a result of MCI's defective
design.

ANSWER:  MCI denies the allegations of Paragraph 70.

71.    Pursuant to the provisions of the policy of insurance issued to Cavallo by NYMARINE, NYMARINE made payments on behalf of Cavallo to settle the claims asserted by Plaintiffs.

   **ANSWER:  MCI admits NYMARINE made payments to settle the claims of Plaintiffs, but lacks knowledge or information sufficient to form a belief as to the remaining allegations.**

72.    By virtue of said payments, terms of said policies of insurance, and by virtue of equity, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo against the Defendants, MCI and Doe Corporations 1-5.

   **ANSWER:  Paragraph 72 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.**

## COUNT FIVE OF THIRD-PARTY COMPLAINT AGAINST MCI: NEGLIGENT FAILURE TO WARN

73.    Defendant and Third-Party Plaintiffs reallege paragraphs 1-72 as if specifically set forth herein.

   **ANSWER:  MCI realleges its responses in Paragraphs 1-72 as if specifically set forth herein.**

74.    Injury could have been reasonably anticipated if an adequate warning was not given for Cavallo's reasonably foreseeable use of the bus and "Master Switch" as designed.

   **ANSWER:  MCI denies the allegations of Paragraph 74.**

75.    MCI and Doe Corporations 1-5 owed a duty to give adequate warning of known or reasonably anticipated dangers of the bus and "Master Power Switch."

ANSWER: MCI denies the allegations of Paragraph 75.

76. MCI and Doe Corporations 1-5 breached this duty.

ANSWER: MCI denies the allegations of Paragraph 76.

77. The danger or potentiality of this danger was not obvious or actually known to Cavallo or Plaintiff.

ANSWER: MCI denies the allegations of Paragraph 77.

78. This failure to warn was the cause of the Plaintiffs damages and Mr. Stensland's injuries and death.

ANSWER: MCI denies Paragraph 78, and further affirmatively alleges that the proximate and actual cause of Mr. Stensland's injuries and death were the negligence of Cavallo's employee, Kristie Monigan, as well as Cavallo's negligent hiring, retention, supervision, and training of Ms. Monigan and Cavallo's negligent maintenance of the bus.

79. Pursuant to the provisions of the policy of insurance issued to Cavallo by NYMARINE, NYMARINE made payments on behalf of Cavallo to settle the claims asserted by Plaintiffs.

ANSWER: MCI admits NYMARINE made payments to settle the claims of Plaintiffs, but lacks knowledge or information sufficient to form a belief as to the remaining allegations.

80. By virtue of said payments, terms of said policies of insurance, and by virtue of equity, NYMARINE has become legally, contractually, and equitably subrogated to all rights, remedies, and causes of action accruing to Cavallo against the Defendants, MCI and Doe Corporations 1-5.

ANSWER: Paragraph 80 contains legal conclusions to which no response is required. To the extent a response is required, MCI lacks knowledge or information sufficient to form a belief, and therefore denies the same.

## COUNT SIX OF THIRD-PARTY COMPLAINT AGAINST MCI AND DOE CORPORATIONS 1-5: EQUITABLE CONTRIBUTION

81. Defendant and Third-Party Plaintiffs reallege paragraphs 1-80 as if specifically set forth herein.

**ANSWER: MCI realleges its responses in Paragraphs 1-80 as if specifically set forth herein.**

82. All parties to the settlement agreement, including MCI and its insurer, agreed that the total amount of the Settlement Agreement was reasonable.

**ANSWER: MCI admits that the total amount of the Settlement Agreement was reasonable. Except as expressly admitted herein, MCI lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 82, and therefore denies the same.**

83. Pursuant to the Parties' settlement agreement, NYMARINE has paid more than its equitable share, while MCI and Doe Corporations 1-5 have contributed less toward the settlement than equity and justice demands.

**ANSWER: MCI denies the allegations of Paragraph 83.**

84. Under applicable tort law, MCI and Doe Corporations 1-5 have an obligation to reimburse NYMARINE for the amount that it should have paid towards the settlement with Plaintiffs.

**ANSWER: MCI denies the allegations of Paragraph 84.**

85. Based upon the foregoing, NYMARINE is entitled to judgment awarding to NYMARINE that portion of the settlement paid by NYMARINE for which MCI and Doe Corporations 1-5 are liable as a matter of equity, plus interest thereon.

**ANSWER: MCI denies the allegations of Paragraph 85.**

## COUNT SEVEN OF THIRD-PARTY COMPLAINT AGAINST MCI AND DOE CORPORATIONS 1-5: EQUITABLE AND IMPLIED INDEMNIFICATION

86.    Defendant and Third-Party Plaintiffs reallege paragraphs 1-85 as if specifically set forth herein.

**ANSWER: MCI realleges its responses in Paragraphs 1-85 as if specifically set forth herein.**

87.    All parties to the settlement agreement, including MCI and its insurer, agreed that the total amount of the Settlement Agreement was reasonable.

**ANSWER:  MCI admits that the total amount of the Settlement Agreement was reasonable. Except as expressly admitted herein, MCI lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 87, and therefore denies the same.**

88.    Pursuant to the Parties' settlement agreement, NYMARINE has contributed to the settlement agreement, though, for the reasons stated above, equity and justice demands that MCI and Doe Corporations 1-5 reimburse NYMARINE for the entire amount paid by NYMARINE in settlement of the claims asserted by Plaintiffs.

**ANSWER:  MCI denies the allegations of Paragraph 88.**

89.    The independent actions of Cavallo and NYMARINE cannot be held to have contributed, or proximately caused, the Plaintiffs' loss. Rather, MCI and Doe Corporations 1-5 must be held liable for the full amount of Plaintiffs' loss due to their negligence in the design, manufacture, assembly, and distribution of the bus and unreasonably dangerous and defective condition of the bus.

**ANSWER: MCI denies the allegations of Paragraph 89, further denies Motor Coach Industries International, Inc. was a designer, manufacturer, assembly or distributor of the bus, and affirmatively states that the sole proximate cause of Plaintiffs' loss**

was the negligence of Cavallo's employee, Kristie Monigan , as well as Cavallo's negligent hiring, retention, supervision, and training of Ms. Monigan  and Cavallo's negligent maintenance of the bus.

90.     Under applicable tort law, MCI and Doe Corporations 1-5 have an obligation to reimburse NYMARINE for the entire amount NYMARINE paid towards the settlement with Plaintiffs.

ANSWER: MCI denies the allegations of Paragraph 90.

91.     Based upon the foregoing, NYMARINE is entitled to judgment awarding to NYMARINE that portion of the settlement paid by NYMARINE for which MCI and Doe Corporations 1-5 are liable as a matter of equity, plus interest thereon.

ANSWER:  MCI denies the allegations of Paragraph 91.

## AFFIRMATIVE DEFENSES

92.     For its affirmative defenses to the Amended Third-Party Complaint, MCI alleges the following: failure to state a claim upon which relief may be granted, MCI affirmatively alleges state of the art, compliance with industry standards, contributory negligence, assumption of the risk, misuse, waiver, warranty, lack of duty, lack of subject matter jurisdiction, improper venue, forum non conveniens, contribution, indemnity and set off based on indemnity (contractual, equitable, and implied) and assigned account obligations.

## COUNTERCLAIMS

For its First Amended Counterclaims against Defendants and Third-Party Plaintiffs, Cavallo Bus Lines, Inc. ("Cavallo Inc.") and Cavallo Bus Lines, LLC ("Cavallo LLC"), and New York Marine and General Insurance Company ("NYMARINE"), Third-Party Defendant and Counterclaimant, Motor Coach Industries, Inc., ("MCI Inc."), by and through its attorneys of

record, Terry L. Hofer, Bangs McCullen Law Firm, and Nicholas C. Grant, Ebeltoft . Sickler . Lawyers . PLLC, alleges as follows:

## COUNTERCLAIM ONE – CONTRACTUAL INDEMNITY

93.    MCI Inc. realleges its response to Paragraph 8 above.

94.    On or about December 2012, MCI Inc. entered into an agreement with Cavallo Inc. to purchase certain buses, MCI 2013 Intercity Coach Model J4500 ("the "Agreement to Purchase").

95.    As part of its purchase obligations, Cavallo Inc. agreed to defend, indemnify and hold harmless MCI Inc. from and against any and all claims and damages, including attorney fees, resulting from, arising out of or in connection with Cavallo Inc.'s actual or alleged negligence, recklessness, or intentional misconduct by Cavallo Inc. or any of its employees, agents, or contractors, or any breach by buyer of any of the provisions, terms, or conditions of the Agreement to Purchase. .

96.    In this case, Plaintiff Stensland alleges Cavallo Inc. and Cavallo LLC were negligent causing the December 21, 2017 collision between the bus and van resulting in wrongful death damages.

97.    To this extent, and pursuant to their contractual obligations under the Agreement to Purchase, Cavallo Inc. must defend and indemnify MCI Inc. and their failure to do so is a breach of Cavallo Inc.'s agreement to indemnify.

98.    Further, Cavallo Inc. agreed to indemnify and defend MCI Inc. for any breach of the Agreement to Purchase.

99.    Cavallo Inc. breached the Agreement to Purchase by, among other things, failing to ensure that its employee, Kristi Monigan, complied with the Federal Motor Carrier Safety Regulations by, among other things, failing to activate the hazard warning signal flashers on the bus, said failure being both

a breach of Section 20 of the Agreement to Purchase and a proximate cause of Cade Stensland's injuries and death.

100.　As a result of Cavallo Inc.'s and its employee's negligence and breach of contract, MCI Inc. has sustained and will sustain further damages for which Cavallo Inc. is contractually obligated, said damages being the amount paid to settle the Plaintiffs' claims, attorneys' fees, expert fees, costs and expenses, both past and future.

## COUNTERCLAIM TWO —SET OFF

101.　MCI Inc. realleges its response to Paragraph 8 above.

102.　During 2017-18, Cavallo Inc. and Cavallo LLC ordered and received service and parts from, and in exchange incurred debt and account obligations to, MCI Service Parts, Inc. and MCI Sales and Service, Inc., in the respective amounts of $222,234.84 and $3,796.01.

103.　On or about November 6, 2018, MCI Service Parts, Inc. and MCI Sales and Service, Inc., as assignors, assigned to MCI Inc., as assignee, in an intercompany assignment, Cavallo Inc.'s and Cavallo LLC's unpaid debt and account receivable obligations and claims against Cavallo Inc. and Cavallo, LLC, in the respective amounts of $222,234.84 and $3,796.01.

104.　After notice and demand, Cavallo Inc. and Cavallo LLC have failed to pay these debt and account receivable obligations and claims.

105.　Cavallo Inc. and Cavallo LLC owe MCI Inc. these debt and account receivable obligations and claims in the respective amounts of $222,234.84 and $3,796.01.

106.　As a result of Cavallo Inc.'s and Cavallo LLC's breach and failure to pay, MCI Inc. has incurred damages.

## COUNTERCLAIM THREE – EQUITABLE CONTRIBUTION

107.  MCI Inc. realleges the allegations of Paragraphs 93 through 106 as if fully set forth herein.

108.  Plaintiffs sued Cavallo Inc. and Cavallo LLC, alleging negligence as their sole cause of action.

109.  On October 29, 2019, MCI Inc. and its insurance carrier contributed to the settlement of Plaintiffs' claims, subject to a full reservation of rights to pursue Cavallo Inc., Cavallo LLC, and NYMARINE for contribution. All parties and their insurance carriers agreed the settlement was reasonable.

110.  The amount paid by MCI Inc. and its insurance carrier is disproportionate to MCI, Inc.'s fault, which is expressly denied, and the amount they paid to settle Plaintiff's claims is more than equity and justice demands.

111.  The sole, proximate cause of Plaintiff's injuries and damages was the negligence of Cavallo Inc., Cavallo LLC and their employee, Kristie Monigan, said negligence consisting of the following:

A.  Ms. Monigan 's negligence in activating the Master Power Switch while the bus was in motion, failing to recognize what she had done, failing to take immediate corrective action, and failing to active the hazard warning signal flashers, all of which was done in the course and scope of her employment with Cavallo, Inc. and/or Cavallo, LLC, and for which Cavallo, Inc. and/or Cavallo, LLC are liable under the doctrine of respondeat superior;

B.  Cavallo Inc. and/or Cavallo LLC's negligent hiring of Ms. Monigan  due to their failure to conduct the background check required by the Federal Motor Carrier Safety Regulations or to contact her references, and their further negligence in rehiring Ms. Monigan after a "leave of

absence" after learning that prior to her initial hiring, she had been involved in an accident with her prior employer that she failed to disclose and further learning that while employed by Cavallo Inc. and/or Cavallo LLC she had been cited for numerous speeding and lack of insurance violations;

     C.    Cavallo Inc. and/or Cavallo LLC's negligent retention of Ms. Monigan after she was disciplined multiple times for safety violations while employed by Cavallo Inc. and/or Cavallo LLC, and their further act of allowing Ms. Monigan to drive for Cavallo for extended periods of time while she did not hold a valid Commercial Driver's License;

     D.    Cavallo Inc. and/or Cavallo LLC's negligent training of Ms. Monigan, including, but not limited to, failing to train her on the operation of the bus and further failing to train her on the Master Power Switch and other controls in the bus, such as the switch that would allow the hazard warning signal flashers to be activated even if the Master Power Switch was in the "OFF" position; and

     E.    Cavallo Inc. and/or Cavallo LLC's negligent failure to maintain the bus, including, but not limited to, refusing to send a replacement bus and/or repair the bus after it experienced mechanical issues on the subject trip wherein the underlying incident occurred.

112.   Under applicable law, Cavallo Inc., Cavallo, LLC and/or NYMARINE are required to reimburse MCI, Inc. for the difference between what MCI Inc. paid towards the settlement of Plaintiffs' claims and what it should have paid based on the parties' respective fault.

113.   Based on the foregoing, MCI Inc. is entitled to a judgment against Cavallo Inc., Cavallo LLC and NYMARINE, jointly and severally, for the amount MCI Inc. paid to settle the Plaintiffs' claims for which Cavallo Inc., Cavallo LLC, and NYMARINE are liable as a matter of law and equity, plus interest thereon.

## COUNTERCLAIM FOUR – EQUITABLE AND IMPLIED
## INDEMNIFICATION

114. MCI Inc. realleges the allegations of Paragraphs 93 through 114 as if fully set forth herein.

115. Plaintiffs sued Cavallo Inc. and Cavallo LLC, alleging negligence as their sole cause of action.

116. On October 29, 2019, MCI Inc. and its insurance carrier contributed to the settlement of Plaintiffs' claims, subject to a full reservation of rights to pursue Cavallo Inc., Cavallo LLC, and NYMARINE for indemnity. All parties and their insurance carriers agreed the settlement was reasonable.

117. The sole, proximate cause of Plaintiff's injuries and damages was the negligence of Cavallo Inc. and Cavallo LLC and its employee, Kristie Monigan, said negligence consisting of the following:

A.    Ms. Monigan 's negligence in activating the Master Power Switch while the bus was in motion, failing to recognize what she had done, failing to take immediate corrective action, and failing to activate the hazard warning signal flashers, all of which was done in the course and scope of her employment with Cavallo, Inc. and/or Cavallo, LLC, and for which Cavallo, Inc. and/or Cavallo, LLC are liable under the doctrine of respondeat superior;

B.    Cavallo Inc. and/or Cavallo LLC's negligent hiring of Ms. Monigan  due to their failure to conduct the background check required by the Federal Motor Carrier Safety Regulations or to contact her references, and their further negligence in rehiring Ms. Monigan after a "leave of absence" after learning that prior to her initial hiring, she had been involved in an accident with her prior employer that she failed to disclose and further learning that while employed by Cavallo Inc. and/or Cavallo LLC she had been cited for numerous speeding and lack of insurance violations;

C.     Cavallo Inc. and/or Cavallo LLC's negligent retention of Ms. Monigan after she was disciplined multiple times for safety violations while employed by Cavallo Inc. and/or Cavallo LLC, and their further act of allowing Ms. Monigan to drive for Cavallo for extended periods of time while she did not hold valid Commercial Driver's License;

D.     Cavallo Inc. and/or Cavallo LLC's negligent training of Ms. Monigan, including, but not limited to, failing to train her on the operation of the bus and further failing to train her on the Master Power Switch and other controls in the bus, such as the switch that would allow the hazard warning signal flashers to be activated even if the Master Power Switch was in the "OFF" position;

E.     Cavallo Inc. and/or Cavallo LLC's negligent failure to maintain the bus, including, but not limited to, refusing to send a replacement bus and/or repair the bus after it experienced mechanical issues on the subject trip wherein the underlying incident occurred.

118.   Under applicable law, Cavallo Inc., Cavallo, LLC and/or NYMARINE are required to reimburse MCI Inc. for the entire amount MCI Inc. paid towards the settlement of Plaintiffs' claims, as any negligence or other wrongdoing on the part of MCI Inc. did not contribute to nor proximately cause injuries and damages to Plaintiffs.

119.   Based on the foregoing, MCI Inc. is entitled to a judgment against Cavallo Inc., Cavallo LLC and NYMARINE, jointly and severally, for the entire amount MCI Inc. paid to settle the Plaintiffs' claims, as required by equity, plus interest thereon.

### COUNTERCLAIM FIVE – DECLARATORY JUDGMENT

120.   MCI Inc. realleges the allegations of Paragraphs 93 through 119 as if fully set forth herein.

121.   In the event the Court determines that the parties' rights, remedies, claims, causes of action, and defenses are governed by Illinois law, then MCI Inc.

seeks a declaration from this Court that, pursuant to the Illinois Tortfeasor Contribution Act (740 ILCS § 100/2), Third-Party Plaintiffs' claims for equitable and implied indemnification are barred by Illinois Tortfeasor Contribution Act.

122. The Illinois Tortfeasor Contribution Act bars all claims for implied indemnity, but does not bar claims for express contractual indemnity.

123. MCI Inc. does not owe Third-Party Plaintiffs' any express contractual indemnity; rather, it is Cavallo Inc. that owes such express contractual indemnity to MCI Inc.

124. Thus, in the event Illinois law governs the parties' rights, remedies, claims, causes of action, and defenses, then MCI Inc. is entitled to a declaration from this Court finding that Third-Party Plaintiffs are barred from pursuing equitable and implied indemnification from MCI Inc.

WHEREFORE, Third-Party Defendants, Motor Coach Industries International, Inc. and Motor Coach Industries, Inc., and Counterclaimant Motor Coach Industries, Inc., pray for relief as follows:

1. For Judgment in favor of MCI and against Cavallo Inc., Cavallo LLC, and NYMARINE dismissing on the merits and with prejudice the Amended Third-Party Complaint;

2. For Judgment in favor of MCI Inc. and against Cavallo Inc., Cavallo LLC, and NYMARINE, jointly and severally, for equitable contribution, in an amount to be proven at trial;

3. For Judgment in favor of MCI Inc. and against Cavallo Inc., Cavallo LLC, and NYMARINE, jointly and severally, for indemnity

in the amount paid by MCI Inc. towards the settlement of Plaintiffs' claims;

4. In the event it is determined that Illinois law governs the parties' rights, remedies, claims, causes of action, and defenses, a declaration that Cavallo Inc. and Cavallo LLC's claims for equitable and implied indemnification are barred by the Illinois Tortfeasor Contribution Act;

5. For Judgment in favor of MCI Inc. and against Cavallo Inc. and Cavallo LLC for all attorneys' fees, costs, and expenses incurred to date and in the future;

6. For Judgment in favor of MCI Inc. and against Cavallo Inc. and Cavallo LLC, jointly and severally, on account obligations in an amount of $222, 234.84 and $3,796.01 plus interest;

7. For costs, disbursements, prejudgment interest and post judgment interest and attorney fees; and

8. For such other and further relief as the Court deems just under the circumstances.

Dated: March 23, 2020.

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

By: _____
Terry L. Hofer
Attorneys for Third-Party Defendants
333 W. Blvd., Ste #400
PO Box 2670
Rapid City, SD 57709
(605) 343-1040
thofer@bangsmccullen.com

and

By: _____

Nicholas C. Grant
Ebeltoft . Sickler . Lawyers PLLC
2272 8th Street West
Dickinson, North Dakota 58601
701.225.LAWS (5297)
701.225.9650 fax
ngrant@ndlaw.com